Slip Copy                                                                                                                                  Page 1
Slip Copy, 2005 WL 1335888 (E.D.Cal.)
**(Cite as: 2005 WL 1335888 (E.D.Cal.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
Ronald E. HIGGERSON, Petitioner,
v.
Lou BLANAS, et al., Respondents.
No. CIVS001962MCEJFMP.

May 27, 2005.

Ronald E. Higgerson, Bakersfield, CA, pro se.

Arnold O. Overoye, Attorney General's Office, Sacramento, CA, for Respondents.

*FINDINGS AND RECOMMENDATIONS*

MOULDS, Magistrate J.

**\*1** Petitioner is a former county jail inmate proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction on multiple state law misdemeanor counts of acting as a dealer, manufacturer or transporter of vehicles without a license or temporary permit, or with a suspended or revoked license, and obtaining money or property by false pretenses; and one misdemeanor count of false representations in the solicitation of charitable contributions. This matter was submitted for decision on June 28, 2001, with the filing of petitioner's traverse. On July 5, 2001, petitioner filed a motion for an evidentiary hearing, and on May 20, 2002, petitioner filed an application for leave to file a third amended petition. Both motions are pending before this court.

I. *Petitioner's Motion to Amend*

Petitioner filed this action on September 11, 2000. On October 2, 2000, this court issued findings and recommendations recommending dismissal of the action for failure to exhaust state remedies. On October 11, 2000, petitioner filed objections to the findings and recommendations together with a proposed amended petition. By order filed October 19, 2000, this court vacated the findings and recommendations and granted petitioner thirty days to file an amended petition that was complete in itself without reference to the original petition. On October 26, 2000, petitioner filed an amended petition. This action is currently proceeding on that pleading, which will be referred to herein as the amended petition.

On March 21, 2001, petitioner filed a motion for leave to file a third amended petition. By order filed April 9, 2002, that motion was granted. However, in a subsequent order filed April 30, 2002, the court vacated that order and struck both the motion to amend and the proposed third amended petition from the record due to petitioner's failure to serve either document on counsel for respondents.

On May 20, 2002, petitioner filed a new application for leave to file a third amended petition. Respondents oppose that request on the grounds that petitioner unduly delayed in seeking amendment and that the amended petition "is basically a regurgitation of the claims previously raised by petitioner." (Respondent's Opposition to Petitioner's Request to File a Third Amended Petition, filed May 28, 2002, at 2.) On May 17, 2004, petitioner filed a request for ruling on his motion to amend, and on September 9, 2004, petitioner filed a document styled "Supplemental Information to Petition for Writ of Habeas Corpus." On September 20, 2004, respondents filed an opposition to the latter document.

Petitioner raises four claims for relief in the amended petition, as follows: (1) the state courts violated his right to due process by denying his state petitions for writ of habeas corpus without a hearing or a ruling on the merits; (2) modification of petitioner's sentence violated his rights under the Eighth Amendment; (3) he received constitutionally ineffective assistance of counsel through numerous errors of counsel; and (4) the trial court erred in denying a requested defense jury instruction and in failing to give a different instruction sua sponte.

**\*2** Petitioner's motion to amend is reviewed under the standards set forth in Fed.R.Civ.P. 15(a). *See Bonin v. Calderon,* 59 F.3d 815, 846 (9th Cir.1995). Rule 15(a) provides for amendment of pleadings once as of right prior to service of a responsive pleading, and thereafter only with leave of court which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Four factors are considered in determining the propriety of amendment: " 'bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings.' " *Caswell v. Calderon,* 363 F.3d 832, 837 (9th Cir.2004) (quoting, *Bonin, supra,* 59 F.3d at 844-45).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Here, as in *Bonin,* petitioner was given leave to amend his petition in October 2000 to raise all of his habeas corpus claims without reference to a prior pleading. Petitioner asserts that state court remedies have been exhausted for all claims contained in the proposed third amended petition, but he offers no explanation for the failure to raise those claims in the amended petition filed pursuant to the court's October 2000 order. Petitioner has not identified with any specificity in his application to amend the petition which claims in the petition are new and which claims, if any, are contained in the amended petition but now supported by additional factual material or contentions of law. [FN1] The proposed third amended petition appears to be an amalgam of both, as well as a reiteration without substantial change of some of the claims raised in the original petition. The form in which it is presented makes it difficult to decipher individual claims, which would prejudice both respondents in answering and this court in resolving the claims contained therein. In addition, petitioner's request to file a third amended petition was brought almost one year after petitioner filed his traverse, and long after the matter was submitted for decision.

> FN1. In the "supplemental information" filed September 9, 2004, petitioner asserts that he had been "diligently performing an ongoing investigation of the issues surrounding his trial" and that "such investigation has revealed additional elements of the original claims made therein from time to time" and that petitioner had "just recently, within the last 2 weeks, obtained such elements ." (Supplemental Information, filed September 9, 2004, at 2.) It is difficult to determine from the materials presented by petitioner what those "additional elements" are, i.e., whether they are factual information, legal argument, or both, and why any allegedly new information could not have been presented earlier. Moreover, any facts that put any of petitioner's claims in a "significantly different and stronger evidentiary posture" than that addressed by the state court would render such claim or claims unexhausted. See *Aiken v. Spalding,* 841 F.2d 881, 883 (9th Cir.1988) (per curiam).

For all of the foregoing reasons, petitioner's request for leave to file a third amended petition should be denied.

II. *Merits of the Amended Petition*

A. *Facts*

1. *Procedural Background*

On May 18, 1999, petitioner was charged in a second amended complaint with twenty-four misdemeanor counts of acting as a dealer, manufacturer or transporter of vehicles without a license or temporary permit or with a suspended or revoked license, in violation of Cal. Veh.Code § 11700; twelve misdemeanor counts of obtaining money or property by false pretenses, in violation of Cal. Pen.Code § 532(a); and one misdemeanor count of false representations in the solicitation of charitable contributions, in violation of Cal. Pen.Code § 532d. (Answer, Ex. A at 42, 72.) On June 9, 1999, petitioner was convicted by a jury of all counts against him. (*Id.* at 237- 84.)

2. *Factual Background* [FN2]

> FN2. The following statement of facts is a summary of a DMV Bureau of Investigation report that was contained in petitioner's probation report. (Answer, Ex. A at 382-83.) The facts surrounding petitioner's claim of ineffective assistance of counsel are contained in the unsealed transcript of petitioner's motions pursuant to *People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970), contained in Exhibit P to the Answer, and will be set forth below in connection with this court's analysis of that claim.

In 1996, the defendant started what was to be a non-profit public benefit corporation titled "United Community Charity." The purpose of this charity was to develop, maintain, and operate community shelters for battered women and children. The defendant acted as the director of the corporation, and in 1996, he began to develop a T.V. ad campaign, soliciting public donations. Additional ads were subsequently placed in the local "Penny Saver" and "Magic-Ads" periodicals. In 5/97, the defendant changed the name of the charity to "Foundation for Abused Children."

**\*3** In 8/97, the defendant leased a used car lot, which was to facilitate the sales of the donated vehicles. The defendant then began to sell the donated vehicles to the public. Due to the defendant's status as a non-profit charitable

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

organization, DMV did not require that he have a vehicle sales license. DMV did require, however, that the defendant perform vehicle safety checks on each vehicle sold, in addition to a smog check with certificate. During the life of the charity, it is estimated that approximately 1,098 vehicles were donated by private parties, with the understanding that the money received from the resale of the vehicles would be applied towards the defendant's charity.

Prior to the individual sale of each vehicle, the defendant required that each victim pay a large cash deposit, in addition to signing a contract that prohibited refunds. Additionally, if the victim walked away from the deal, the cash deposit was then considered a donation to the charity.

The defendant would typically sell the donated vehicles with the understanding that the cars were in good working condition. Victims were sold vehicles and typically told to return within 3 to 4 working days so the car could be safety checked and smog certified. The victims would often return to pick up their vehicle and were delayed due to the vehicle failing to pass the smog check. When the victims did manage to get delivery on their vehicle, they typically experienced mechanical breakdowns, which often required immediate mechanical repair. The victims would typically return their vehicle to the defendant, requesting a refund, or repair of the vehicle. Often victims were refused refunds and a refusal to repair the vehicle. Many of the victims took their car to a qualified mechanic, only to learn that there were serious mechanical problems with their vehicles, which included faulty engines, transmissions, and failing brake systems. Many victims reported that repairs the defendant agreed to complete were never done, leaving the victim with no recourse.

During the life of the charity, it is estimated the defendant received over $750,000 from the sales of the donated vehicles. It is estimated that charity received a potential amount of $1.2 million overall. To date, all of the money the defendant received is unaccounted for. Although the defendant claims to have reinvested this money into the business, the cash-only nature of the defendant's purchase policy has made it extremely difficult for the auditor to track the defendant's assets. Although the defendant has made claims that some of the money received was spent on charitable endeavors, there is no proof that this has occurred.

B. *Standards for a Writ of Habeas Corpus*

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> **\*4** (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer,* 537 U.S. 3, 7, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*citing Williams,* 529 U.S. at 405-406).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous." ')

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir.2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

C. *Due Process Claim*

Petitioner's first claim is that the state courts violated his right to due process by denying his state petitions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for writ of habeas corpus without a hearing or a ruling on the merits. His claim is stated, in full, as follows:

> Petitioner's petition for habeas corpus has been denied by the Sacto. Superior Ct. the 3rd District Court of Appeals and the Calif. Supreme Courts all without a hearing or ruling upon the merits. Petitioner contends such violated his right of due process of law as guaranteed by the 14th Amendment to the U.S. Constitution.
>
> (Pet. at 5.)

It is well-settled that " '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." ' *Jones v. Gomez,* 66 F.3d 199, 204 (9th Cir.1995) (quoting *James v. Borg,* 24 F.3d 20, 26 (9th Cir.1994)). Petitioner's vague claim in this regard, which is unsupported by citation to the record or relevant caselaw, is insufficient to establish a due process violation.

**\*5** To the extent petitioner is alleging that the state courts improperly rejected some of his claims on procedural grounds or in a summary fashion rather than "on the merits" and/or improperly failed hold an evidentiary hearing, his claims lack merit and should be denied.

The state court record reflects that on December 6, 1999, petitioner, proceeding through counsel, filed an opening brief on appeal in the Appellate Division of the California Superior Court. (Answer, Ex. B.) By order dated July 27, 2000, petitioner's appeal was summarily denied. (Answer, Ex. E.)

On December 8, 1999, petitioner, proceeding in pro per, filed a petition for writ of habeas corpus in the Sacramento County Superior Court. (Answer, Ex. F.) That petition was denied by order dated February 9, 2000. (*Id.*) The Superior Court denied a number of petitioner's claims because they were the subject of petitioner's pending appeal. Petitioner's claims of ineffective assistance of counsel newly raised in the habeas petition were denied on the basis that they were too conclusory to establish either deficient performance by counsel or prejudice. Petitioner's final claim was denied because of the unjustified failure to include the claim on direct appeal. (*Id.*)

On March 27, 2000, petitioner filed another petition for writ of habeas corpus in the Sacramento County Superior Court. (Answer, Ex. G.) Petitioner claimed that the trial court improperly amended the original sentencing order to increase his punishment and denied his ex parte application for release from custody without first conducting a hearing. (*Id.*) This petition was denied on the ground that the trial court's amendment of the sentencing order was proper to correct a clerical error and that a hearing was not necessary for that purpose. (*Id.*)

On October 11, 2000, petitioner filed another petition for writ of habeas corpus in the Sacramento County Superior Court. (Answer, Ex. H.) That petition was denied in a reasoned decision dated October 30, 2000. (*Id.*)

On February 28, 2000, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. (Answer, Ex. I.) That petition was summarily denied by order dated March 30, 2000. (*Id.*)

On May 4, 2000, petitioner filed another petition for writ of habeas corpus in the California Court of Appeal. (Answer, Ex. J.) That petition was summarily denied by order dated May 11, 2000.

On September 25, 2000, petitioner filed another petition for writ of habeas corpus in the California Court of Appeal. (Answer, Ex. K.) That petition was denied by order dated September 28, with a citation to *In re Hillery,* 202 Cal.App.2d 293, 20 Cal.Rptr. 759 (1962). [FN3] (*Id .*)

> FN3. *In re Hillery* held that a California District Court of Appeal has discretion to refuse to issue a writ of habeas corpus as an exercise of original jurisdiction on the ground that application has not been made in a lower court in the first instance, where there is no showing in the petition that any extraordinary reason exists for action by the District Court of Appeal rather than by the Superior Court. 202 Cal.App.2d at 294, 20 Cal.Rptr. 759.

On May 3, 2000, petitioner filed a petition for writ of mandate in the California Court of Appeal. (Answer, Ex. L.) That petition was summarily denied by order dated May 11, 2000. (*Id.*)

On April 13, 2000, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Answer, Ex. N.) That petition was summarily denied by order dated August 9, 2000. (*Id.*)

**\*6** On May 17, 2000, petitioner filed two petitions for writ of mandate/review in the California Supreme Court. (Answer, Ex. M, O.) One of those petitions was transferred by the Supreme Court to the

California Court of Appeal, which summarily denied the petition by order dated May 25, 2000. (Answer, Ex. M.) The other petition was summarily denied by the California Supreme Court by order dated August 9, 2000. (Answer, Ex. O.)

The above summary demonstrates that the California courts reviewed all of petitioner's filed petitions and addressed the claims contained therein. There is no federal constitutional prohibition preventing state courts from disposing of claims in a summary fashion or on procedural grounds and there is no federal requirement that state courts consider claims with a full discussion of the merits. In addition, absent any citation to authority or the existence of a lower state court decision relying on procedural grounds, this court presumes that the California Supreme Court's denial of a habeas petition without comment or citation constitutes a decision on the merits. *See Hunter v. Aispuro, 982 F.2d 344, 346-7 (9th Cir.1992).* Finally, although there is no evidence that petitioner obtained an evidentiary hearing on any of his claims, petitioner has failed to demonstrate that he requested or was entitled to a hearing.

To the extent petitioner is arguing the state courts rejected his claims on collateral review without sufficient consideration or using improper procedures, he has failed to state a federal claim. No constitutional provision or federal law entitles petitioner to any state collateral review, *Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987),* much less review "on the merits" or review with an evidentiary hearing. Unless state collateral review violates some independent constitutional right, errors cannot form the basis for federal habeas corpus relief. *See Franzen v. Brinkman, 877 F.2d 26 (9th Cir.1989)* (errors in a state post-conviction review proceeding are not addressable through federal habeas corpus).

Petitioner has failed to demonstrate that the state courts' handling of his claims violated his due process rights or any other constitutional right. Accordingly, petitioner is not entitled to relief on this claim.

D. *Eighth Amendment*

Petitioner claims that his sentence of five years in jail violated his rights under the Eighth Amendment. Although petitioner's claim in this regard is somewhat unclear, it appears to be based on several underlying arguments. The court will evaluate these arguments in turn below.

1. *Modification of the Sentencing Order*

Petitioner first challenges the trial court's modification of the sentencing document to clarify that he had been sentenced to a five year jail term. The facts surrounding this claim are the following.

On July 16, 1999, petitioner was placed on probation for 5 years on certain terms and conditions, including that petitioner serve 78 days in the Sacramento County Jail and 76 days in the Sacramento County Jail on each of 24 counts, with imposition of judgment and sentence suspended as to the remaining 13 counts. (Answer, Ex. A at 408.) On March 8, 2000, petitioner filed in the trial court an application for release from custody, alleging that his sentence had been served in accordance with the trial court's sentencing order. (Answer, Ex. G at 1.) Petitioner interpreted the sentencing order as imposing a total jail term of 154 days (78 days plus one term of 76 days). (*Id.*) Petitioner's application for release from custody was denied on March 8, 2000. (*Id.*) On March 10, 2000, the trial court issued an amended order nunc pro tunc to July 16, 1999, clarifying that petitioner was sentenced to 5 years in custody, composed of 78 days in jail plus 76 days in jail on each of 24 counts. (Answer, Ex. A at the first three pages (unnumbered) after p. 410.)

**\*7** On March 27, 2000, petitioner filed a petition for writ of habeas corpus in the California Superior Court, challenging the trial court's amendment of the sentencing order and its refusal to release him from custody. (Answer, Ex. G at 1.) In rejecting petitioner's arguments, the Superior Court found that the nunc pro tunc order was issued for the purpose of correcting a clerical error to reflect the intent of the sentencing judge and that it did not substantially modify the original judgment or materially alter petitioner's rights. (*Id.*) In reaching its decision, the court stated:

The trial court sentenced petitioner on the charges as follows:
"I'm going to suspend imposition of judgment and sentence as to counts 1 through 37 and place Mr. Higgerson on formal probation for a period of five years on the following terms and conditions: Basically, it is the terms and conditions as set forth in the probation report with a couple of modifications.
"First one, that for the conviction on counts 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 13, 15, 17, 18, 20, 21, 23, 25, 28, 29, 31, 32, 34, and 35, that the defendant shall serve five years in the county jail.

Slip Copy                                                                                                                           Page 6
Slip Copy, 2005 WL 1335888 (E.D.Cal.)
**(Cite as: 2005 WL 1335888 (E.D.Cal.))**

"And for the convictions in counts 4, 12, 14, 16, 19, 22, 24, 26, 27, 30, 33, 36, and 37, the imposition of a term on those counts will be suspended pending the successful completion of probation." (RT 1182.)

In this case, the formal probation order did not accurately reflect what the court ordered. The probation order allocated a specific number of days (i.e., 76 days) to be served as to each count so as to add up to a total of 5 years. The order further specified that the days were to be served consecutively, but did not specify that the terms of each count were to be served consecutively to each other. The court properly construed this as a clerical error an [sic] amended the abstract of judgment to reflect the court's original order. The court was not required to conduct a hearing to amend the probation order as the error was merely clerical in nature and not an error that substantially modified the original judgment or materially altered defendant's rights. *In re Candelario* (1970) 3 Cal.3d 702, 91 Cal.Rptr. 497, 477 P.2d 729; *In re Mills* (1961) 55 Cal.2d 646, 12 Cal.Rptr. 483, 361 P.2d 15.)

(*Id.* at 2.)

In essence, petitioner is challenging the state court's interpretation of state law with regard to modification of a document containing a clerical error. Such a claim is not cognizable in this federal habeas corpus proceeding. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (holding that a federal writ is not available for alleged error in the interpretation or application of state law); *Park v. California,* 202 F.3d 1146, 1149 (9th Cir.2000) (same). Even assuming arguendo that this claim raises a federal question, it should be denied. The record reflects that the sentencing judge intended that petitioner receive a sentence which included five years of jail time, and that is what the amended sentencing order reflects. There is no evidence to support petitioner's claim that the sentencing court intended to sentence him to only a single term of 76 days in jail for a violation of 24 counts of acting as an unlicensed dealer. Indeed, the fact that petitioner waited until eight months had passed to challenge his continued retention in jail belies his assertion that he expected to be in jail for only 154 days. In any event, the state court's modification of the sentencing order to clarify the intent of the sentencing judge did not violate petitioner's Eighth Amendment rights. The Superior Court's rejection of this claim is not based on an unreasonable determination of the facts in this case and is not contrary to or an unreasonable determination of federal law. Accordingly, it should not be set aside.

2. *Retention after Expiration of Sentence*

**\*8** At the time the amended petition was filed, petitioner was serving his sentence in the County Jail. He argued that he had already served his full sentence and was entitled to release. [FN4] He contended that keeping him in jail after his sentence had been served constituted cruel and unusual punishment.

> FN4. In this claim, petitioner appears to be arguing that he was sentenced to only 78 days in jail, as opposed to his argument in state court that he was sentenced to 154 days in jail. (Pet. at "12B Ground Two.")

Petitioner has now served his entire five-year sentence and has been released. To the extent that petitioner is requesting immediate release from custody, his request is moot. For the reasons explained above, petitioner's argument that he was sentenced to 78 (or 154) days in jail lacks a factual basis. In short, petitioner was not detained in jail after his sentence had expired. Accordingly, this claim should be denied.

3. *Disproportionate Punishment*

Petitioner's final Eighth Amendment argument is that his conviction and sentence are unlawful because he is not guilty of the crimes for which he was convicted. He contends, in essence, that the corporation itself, and not he, committed any alleged unlawful and illegal actions. He also argues that because he is innocent, he should have been granted a new trial. Whether petitioner believes he was wrongly convicted or should have been granted a new trial is not relevant to this claim. For purposes of petitioner's Eighth Amendment claim, the issue is whether petitioner's sentence of five years in jail for a conviction of the crimes charged against him constitutes cruel and unusual punishment.

Successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare." *Solem v. Helm,* 463 U.S. 277, 289-90, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *See also Ramirez v. Castro,* 365 F.3d 755, 775 (9th Cir.2004). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Thus,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in recent years the United States Supreme Court has held that it was not an unreasonable application of clearly established federal law for the California Court of Appeal to affirm a sentence of two consecutive 25 year-to-life imprisonment terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes. *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The Supreme Court has also determined that a sentence of 25 years-to-life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the Eighth Amendment. *Ewing v. California,* 538 U.S. 11, 29, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).

This court concludes that petitioner's five-year sentence does not fall within the type of "exceedingly rare" circumstance that would support a finding that his sentence violates the Eighth Amendment. The sentence imposed was within the statutory maximum for the offenses committed by petitioner and was not grossly disproportionate to the crimes of conviction. The state courts' rejection of petitioner's Eighth Amendment claim was neither contrary to, nor an unreasonable application of, controlling principles of clearly established federal law. Accordingly, petitioner is not entitled to relief on this claim.

E. *Ineffective Assistance of Counsel*

***9** Petitioner claims that he received constitutionally ineffective assistance of counsel through numerous errors of counsel. Petitioner's claims are described in forty-five pages of handwritten text and contain multiple repetitions and commingling of allegations. In essence, petitioner complains that counsel failed to adequately investigate his case, which resulted in a failure to present evidence demonstrating petitioner's innocence of the charges against him. The court will evaluate this claim below after setting forth the applicable legal principles. [FN5]

> FN5. The only reasoned decision on petitioner's claims of ineffective assistance of trial counsel was issued by the Sacramento County Superior Court on petitioner's application for writ of habeas corpus. That court denied several prongs of petitioner's ineffective assistance of counsel claim on the ground that they were the subject of a pending direct appeal. (Answer, Ex. F at 3. With respect to petitioner's claims raised for the first time in his habeas corpus petition, the court ruled as follows:
>
> In the present case, petitioner advances several claims of ineffective assistance of counsel but does not allege any facts to explain or corroborate these claims. Petitioner is obliged to state with particularity the facts upon which the petition is based. Factual allegations should be supported by reasonably available documentary evidence such as pertinent portions of the trial transcript and/or affidavits. (citations omitted). Vague, conclusionary allegations are insufficient to warrant issuance of a writ. (citation omitted). Petitioner has not met his burden in showing that counsel was ineffective at trial. He has failed to articulate sufficient facts to satisfy either prong of the *o* [sic] requirement of deficient performance by counsel or prejudice to his misdemeanor case. Consequently, those claims of ineffective assistance of counsel not asserted in the appeal should be rejected.
> (*Id.* at 4, 20 Cal.Rptr. 759.)

1. *Legal Principles*

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See *Strickland,* 466 U.S. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance. *Id.* at 690; *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (quoting *Strickland,* 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg,* 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland,* 466 U.S. at 689).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland,* 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id. See also Williams,* 529 U.S. at 391-92; *Laboa v. Calderon,* 224 F.3d 972, 981 (9th Cir.2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Pizzuto v. Arave,* 280 F.3d 949, 955 (9th Cir.2002) (quoting *Strickland,* 466 U.S. at 697).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "This includes a duty to ... investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir.2001) (citing *Hart v. Gomez,* 174 F.3d 1067, 1070 (9th Cir.1999)). Counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." *Hendricks v. Calderon,* 70 F.3d 1032, 1036 (9th Cir.1995) (quoting *Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir.1994); internal citation and quotations omitted). On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient. *See Siripongs v. Calderon,* 133 F.3d 732, 734 (9th Cir.1998); *see also Babbitt v. Calderon,* 151 F.3d 1170, 1173 (9th Cir.1998). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.' " *Wiggins v. Smith,* 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland,* 466 U.S. at 691).

2. *Petitioner's Claims*

a. *Failure to Introduce Evidence of Petitioner's Innocence*

**\*10** Petitioner claims that his trial counsel rendered ineffective assistance because he failed to adequately investigate evidence that would have established petitioner's innocence. Petitioner states that he made available to counsel the relevant corporate documents but that counsel failed to follow up on the information contained in those documents and failed to meet with petitioner to discuss possible trial defenses and petitioner's lack of involvement in the charged acts. He argues that counsel's failure to adequately investigate the corporation's records precluded him from conducting effective cross-examination of prosecution witnesses and calling company employees to the witness stand who would have testified to petitioner's innocence. Petitioner contends that a careful investigation of the corporation's records would have revealed that no illegal acts ever took place. On the other hand, he argues that if any wrongful acts were committed by the corporation and its other employees, petitioner did not have sufficient interest/ownership/involvement in the corporation to be vicariously liable for these acts. He states that he was "not present, nor involved in, controlled nor directed any of the transactions underlying the charges" and that he informed counsel of this fact. In fact, petitioner informed counsel that he was in the hospital when most of the sales transactions charged in the complaint took place.

Petitioner also faults counsel for failing to obtain expert witnesses to explain the corporation's accounting practices; to support petitioner's testimony that he was not responsible for any illegal acts; to rebut the testimony of the prosecution's expert; and to show that all corporate accounting and business practices were legal, that all monies were properly spent and accounted for, and that petitioner was unable to benefit from monies received by the corporation. Finally, petitioner complains that the corporation itself was not charged with a crime, which prevented him from taking advantage of defenses that would have been available to the corporation.

b. *Trial Strategy*

Petitioner objects to trial counsel's overall trial strategy, arguing that it was inadequate to establish his innocence. He argues that counsel failed to interpose appropriate objections to trial testimony, failed to make proper objections to the prosecutor's proferred jury instructions, failed to move for a mistrial after hearing the testimony of the prosecutor's expert witnesses, failed to adequately prepare for the sentencing hearing, and failed to request a change of venue due to pretrial publicity.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Respondents have lodged the transcript of several *Marsden* hearings wherein petitioner requested that his trial counsel be relieved and new counsel appointed. In one such hearing, petitioner made essentially the same complaints described above. (Answer, Ex. P, Reporter's Transcript of Marsden Motion dated July 6, 1999.) After hearing counsel's explanation for his trial tactics and his response to petitioner's specific allegations, the trial court denied petitioner's motion for new counsel, ruling as follows:

> **\*11** All right. I'm going to actually deny the *Marsden* motion at this time. I find that Mr. Fong did an adequate investigation. I think there is a problem with the amount of funding, but it does not seem to have been something that would have caused a different result in this case.
> But I find that Mr. Fong's performance in investigating with what he had to work with was certainly adequate. The trial tactics are--the trial tactics are the tactics that were made by the attorneys with respect to lack of change of venue or what witnesses to put on and whatnot are not really grounds for ineffective assistance of counsel when you have a rational, rational reason here which I find is present.
> I am concerned about the lack of funds for the investigation, but I find that the investigation, that it was done by Mr. Fong, did not constitute inadequate assistance of counsel.
> There were certain areas in which you yourself were concerned, Mr. Fong, and that you indicated where you asked a question or maybe two of witnesses where you got an answer that you didn't want, but I don't believe from everything that you've said and from what Mr. Higgerson has said and what I observed during the trial that that was that prejudicial in light of all of the evidence.
> And I don't find sufficient evidence here that the inability to investigate each of these witnesses who were the persons who purchased the cars and whose documentation was also in evidence and was open to examination by both sides, that that lack of ability to investigate each of those witnesses would have or constitutes the assistance of counsel in light of this case.
> I think you tried to do everything that you could, and I'm going to deny the motion at this time.

(*Id.* at 58-59, 84 Cal.Rptr. 156, 465 P.2d 44.)

c. *Jury Instructions*

Petitioner also alleges that his trial counsel rendered ineffective assistance with respect to his handling of the jury instructions at petitioner's trial. He argues that counsel: (1) improperly failed to proffer a jury instruction defining the term "knowingly," which allowed the prosecutor to argue improperly to the jury during closing remarks that petitioner did not have to know that other persons were breaking the law in order to be found guilty; (2) was unprepared to "defend against" CALJIC No. 3.26, which improperly allowed petitioner to be found guilty for the unlawful actions of the corporation; [FN6] (3) failed to ensure that the trial court gave CALJIC No. 3.36 (defining criminal or gross negligence); (4) failed to request a jury instruction to the effect that petitioner could be innocent of the charges even though he was a "principal" in the corporation; (5) improperly failed to request the giving of CALJIC Nos. 1.20 (defining the term "willfully"), 1.21 (defining the term "knowingly"), 3.36 (defining "criminal or gross negligence") and 4.35 (explaining "ignorance or mistake of fact"); (6) failed to object to numerous "ambiguous" instructions which did not specify to which charges they pertained; and (7) failed to object to the giving of CALJIC 2.02, which lowered the prosecution's burden of proof on the issue of petitioner's intent. [FN7]

> FN6. That jury instruction provided as follows:
> If you should find that the acts constituting the crime for which the defendant is on trial were committed by or under the name of the corporation, Foundation for Abused Children, then, in considering the question of whether defendant is guilty or not guilty, you must determine whether or not he was a principal in that crime.
> All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or not being present, have advised and encouraged its commission, are principals in any crime so committed.
> (Answer, Ex. A at 194.)

> FN7. That jury instruction provided, in pertinent part, that "[t]he specific intent or mental state with which an act is done may be shown by the circumstances surrounding the commission of the act."

d. *Failure to Investigate Juror Misconduct*

**\*12** Finally, petitioner claims his trial counsel rendered ineffective assistance when he failed to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

move for a mistrial after it was discovered that the jury incorrectly surmised that petitioner obtained money from the charity by submitting bills to the corporation from a nonexistent towing company and then keeping the money for himself.

3. *Analysis*

Petitioner's allegations concerning trial counsel's errors and omissions are, for the most part, vague and conclusory. For instance, petitioner faults counsel for failing to call numerous witnesses to testify to his innocence, but he fails to describe the specific nature of their testimony or to demonstrate that they would have been willing to testify for the defense. *See United States v. Berry, 814 F.2d 1406, 1409 (9th Cir.1987)* (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing); *United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir.1988)* (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify). Petitioner contends that the corporation's books and records would have exonerated him, but he fails to point to any specific records or to explain their contents. *See Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir.1997)* (petitioner's ineffective assistance claim denied where he presented no evidence concerning what counsel would have found had he investigated further, or what lengthier preparation would have accomplished). In fact, the prosecution's expert witness testified that many of the corporation's records were missing, incomplete, or largely nonexistent. (*See e.g.,* Reporter's Transcript of Proceedings dated May 24, 25, 26 and 27, 1999, Volume II at 407-08, 419-20.) Petitioner complains that trial counsel failed to request or object to jury instructions, but he fails to explain how these instructions would have changed the outcome of his trial. These general and unspecific allegations are insufficient to establish ineffective assistance of counsel. *See Jones,* 66 F.3d at 204.

With respect to petitioner's complaints about counsel's trial tactics, counsel's decisions in this regard are "virtually unchallengeable" and this court must assume that counsel's conduct was within the range of competency. *Strickland,* 466 U.S. at 687; *Harris v. Pulley,* 885 F.2d 1354, 1368 (9th Cir.1988). In addition, the court has examined the lodged state court record and concludes that trial counsel's performance did not fall below an objective standard of reasonableness. As explained by the state trial judge when he denied petitioner's *Marsden* motion for substitution of counsel, notwithstanding a lack of funds for investigation counsel's performance was adequate and reasonable under the circumstances.

**\*13** Even assuming arguendo that trial counsel's performance was outside "the wide range of professionally competent assistance" that the Sixth Amendment requires, petitioner has failed to demonstrate how a more thorough investigation into the issues described by petitioner would have led to a different outcome. Put another way, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland,* 466 U.S. at 694. *See also Johnson v. Baldwin,* 114 F.3d 835, 838 (9th Cir.1997). The Court of Appeals for the Ninth Circuit has held that "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986). The prosecution's case against petitioner was strong. The prosecution called numerous witnesses to the stand to testify that they bought mechanically unsound cars from the corporation or failed to receive cars that had been purchased, contrary to representations made to them by petitioner or other corporation employees. (*See e.g.,* Reporter's Transcript of Proceedings dated May 24, 25, 26 and 27, 1999, Volume 1 at 12-40, 44-51, 80-87.) Petitioner took the stand and testified about his extensive involvement with the business. (*See e.g.,* Reporter's Transcript of Proceedings dated Tuesday, June 1, 2, 3, and 4, 1999, at 3-54, 98.) The prosecutor introduced the testimony of an expert on the auditing of charitable organizations. (Reporter's Transcript of Proceedings dated May 24, 25, 26 and 27, 1999, Volume II at 392.) She testified, among other things, that she examined the corporation's books and found no evidence of any charitable activity, that petitioner incorporated and was the president of the corporation, that no money had been set aside for charitable purposes, and that petitioner had improperly benefitted from the corporation. (*Id.* at 396-97, 405-06, 409, 415-16.) In light of the overwhelming evidence presented by the prosecution and petitioner's weak defense, contained largely in his trial testimony, petitioner has failed to demonstrate prejudice due to counsel's alleged deficiencies. Accordingly, petitioner's claim that his trial counsel rendered ineffective assistance should be denied.

F. *Jury Instruction Error*

Slip Copy                                                                                                                                          Page 11
Slip Copy, 2005 WL 1335888 (E.D.Cal.)
**(Cite as: 2005 WL 1335888 (E.D.Cal.))**

Petitioner raises two claims of jury instruction error. The court will evaluate these claims in turn below after setting forth the applicable legal standards.

1. *Legal Standards*

A challenge to jury instructions does not generally state a federal constitutional claim. *See Middleton,* 768 F.2d at 1085 (citing *Engle,* 456 U.S. at 119); *Gutierrez v. Griggs,* 695 F.2d 1195, 1197 (9th Cir.1983). In order to warrant federal habeas relief, an error in jury instructions "cannot be merely 'undesirable, erroneous, or even "universally condemned," ' but must violate some due process right guaranteed by the fourteenth amendment." *Prantil,* 843 F.2d at 317 (quoting *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). To prevail, petitioner must demonstrate that the erroneous charge " 'so infected the entire trial that the resulting conviction violates due process." ' *Estelle,* 502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147). In making its determination, this court must evaluate the challenged jury instructions " 'in the context of the overall charge to the jury as a component of the entire trial process." ' *Prantil,* 843 F.2d at 817 (quoting *Bashor v. Risley,* 730 F.2d 1228, 1239 (9th Cir.1984)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

2. *Jury Instruction Requested by Defense*

 *14 As described above, petitioner was charged with 24 counts of violating California Vehicle Code § 11700. In pertinent part, that code section prohibits a person from acting as a dealer of vehicles without a license or temporary permit. California Vehicle Code § 286(f) provides an exclusion to the definition of a "dealer" for "[p]ersons who are engaged in the purchase, sale, or exchange of vehicles, other than motorcycles, all-terrain vehicles, or trailers subject to identification under this code, *that are not intended for use on the highways"* (emphasis added). Petitioner requested a jury instruction tracking the language of this code section, as follows: "The term 'dealer' does not include persons who are engaged in the purchase, sale, or exchange of vehicles, which are not intended for use on the highways." (Answer, Ex. A at 117.) The instruction was rejected by the trial court for reasons which are not apparent from the record. (*Id.*) [FN8]

> FN8. Respondent represents, and the record reflects, that petitioner waived the presence of the court reporter during discussions between the trial court and counsel about the jury instructions to be given at petitioner's trial. (Answer, Ex. A at 97.)

Petitioner claims that the trial court erred in rejecting his proferred jury instruction. He argues that it provided a "statutory defense" against "the charges" and that it was supported by testimony at trial. [FN9] Although petitioner does not elaborate on this claim in the amended petition before this court, in his direct appeal in state court he argued that the rejected instruction would have provided a defense to four of the counts against him alleging violations of California Vehicle Code § 11700 because the vehicles sold in those transactions were not intended for use on the highways. (Answer, Ex. B at 7-8.) He argued that the jury instruction was supported by his testimony at trial wherein he stated that several of the sold vehicles were for "non-use." (Reporter's Transcript on Appeal of Proceedings dated Tuesday, June 1, 2, 3, and 4, 1999 at 39 .)

> FN9. Petitioner's entire claim is stated as follows: "The trial court rejected petitioner's proferred jury instruction (CT 117) which provided for a statutory defense against the charges, even though support testimony existed for its introduction (RT: 806-811), thus removing such from jury consideration." (Pet. at last consecutive page.)

The California Superior Court provided the last reasoned decision on petitioner's claim in this regard. The court rejected the claim as follows:
> [P]etitioner fails to more specifically identify the rejected instruction, fails to attach a copy of it to the petition, fails to explain whether it is the same or a different instruction that he claimed in his appeal was erroneously rejected, and fails to set forth any statutory or case law that would support his contention that the instruction was erroneously rejected. As such, this part of the claim fails for failure to state a prima facie claim for relief (citation omitted), and failure to state with particularity the facts upon which the petitioner is relying to justify relief (citation omitted), supported by reasonably available documentary evidence or affidavits (citation omitted). In addition, his failure to be more specific also constitutes a failure to show any exception to the *Clark* bar of this part of the claim.

(Answer, Ex. H at consecutive p. 2.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Petitioner's claim contained in the instant amended petition is also vague, cursory and unsubstantiated and, as such, does not warrant habeas corpus relief. See Jones, 66 F.3d at 204. Even assuming arguendo that petitioner's allegations state a federal claim, petitioner has failed to meet his "heavy" burden to demonstrate that the trial court's failure to give this instruction rendered his trial fundamentally unfair. Petitioner's cursory allegations fail to demonstrate that the trial court's failure to give the requested jury instruction would have led to a different verdict on any of the charges against him. The court also notes that petitioner's jury was accurately instructed on the definition of a "dealer" and on certain exclusions to that definition. [FN10] There is no argument that those instructions were incorrect or misleading. The state court's rejection of petitioner's claim in this regard is not contrary to or an unreasonable application of the federal due process principles set forth above and should not be set aside.

> FN10. These instructions provided as follows:
> "Dealer" is a person not otherwise expressly excluded who:
> (a) For commission, money, or other thing of value, sells, exchanges, buys, or offers for sale, negotiates or attempts to negotiate, a sale or exchange of an interest in a vehicle subject to registration under the vehicle code, or induces or attempts to induce any person to buy or exchange an interest in a vehicle and, who receives or expects to receive a commission, money, profit, or any other thing of value, from either the seller or purchaser of said vehicle, or
> (b) Is engaged wholly or in part in the business of selling vehicles, or offering for sale, or otherwise dealing in vehicles, whether or not such vehicles are owned by such person.
> (Answer, Ex. A at 197.)
> The term "dealer" does not include:
> Any public or private nonprofit charitable organization that sells vehicles if all of the following conditions are met:
> 1) The proceeds of the sale of the vehicles are retained by that organization for its charitable purposes.
> 2) The vehicles sold were donated to the organization.
> 3) The vehicles meet all of the applicable equipment requirements of Division 12 and have been issued a certificate of smog compliance.
> 4) The organization has qualified for state and federal tax-exempt status.
> (Answer, Ex. A at 198.)

3. *Failure to Give Jury Instruction Sua Sponte*

**\*15** Petitioner claims that the trial court erred in failing to give the following jury instruction *sua sponte:*
> An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime.
> Thus a person is not guilty of a crime if [he][she] commits an act or omits to act under an actual [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make the act or omission lawful.

Petitioner "contends that the evidence adduced at trial supported and showed that he was, among other things, relying on a defense of no knowledge or participation and of innocence of/in the issues underlying the charges." (Pet. at last consecutive page.)

Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair because of the trial court's failure to give CALJIC 4.35. As noted by respondent, this jury instruction appears to be inconsistent with petitioner's defense that he did not commit any of the charged unlawful acts. See Butcher v. Marquez, 758 F.2d 373, 377 (9th Cir.1985) (defense counsel "need not request instructions inconsistent with its trial theory"). In addition, petitioner fails to point to any evidence that he committed the acts charged in the complaint in ignorance or by reason of a mistake of fact. Under the circumstances of this case, the decision of the state courts rejecting this claim is not unreasonable. Accordingly, petitioner is not entitled to relief. [FN11]

> FN11. Petitioner contends throughout the amended petition that he is innocent of the charges against him. This contention is an integral part of the four specific claims contained in the amended petition. Respondent has construed petitioner's statements in this regard as separate claims of actual innocence and insufficiency of the evidence. However, petitioner has not raised these issues as specific claims. Petitioner does not claim that the record evidence was insufficient to support his convictions. Rather, he claims that trial counsel's failure

to investigate prevented the introduction of evidence that would have demonstrated his innocence. *Cf.* Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that a defendant is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt"). Neither does petitioner raise a separate claim of "actual innocence ." Rather, this contention is simply a part of the allegations contained in petitioner's four claims raised in the instant amended petition.

Even assuming arguendo that petitioner is arguing that evidence outside of the trial record establishes that he is innocent (a "freestanding" claim of actual innocence), his claim must fail. The standard for establishing such a claim on habeas review is " 'extraordinarily high." ' Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.1997) (en banc) (quoting Herrera v. Collins, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). Petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id. See also* Boyde v. Brown, No. 02-99008, 2005 WL 913434, at *6 (Cal. Apr. 21, 2005). Petitioner's allegations fail to meet this standard. As stated by the California Superior Court: "[n]or does petitioner, by any part of his claim, allege and show that he is actually innocent. Nor does he present reasonably available documentary evidence that would undermine the entire prosecution case and point unerringly to innocence or reduced culpability." (Answer, Ex. H at consecutive pgs. 2-3.) This court agrees. Petitioner has failed to affirmatively prove that he is probably innocent. Accordingly, any claim of actual innocence should be denied.

III. *Petitioner's Motion for Evidentiary Hearing*

Petitioner requests an evidentiary hearing on his claims in this court. He states that he is "factually/actually" innocent of the charges against him and that "numerous constitutional violations existed at trial." (Petitioner's Motion for an Evidentiary Hearing, filed July 5, 2001, at 1.) He states that he is entitled to a hearing on his claim of ineffective assistance of counsel because the state court did not provide one and a hearing is required to "expose and clarify" his claims. (*Id.* at 3-4.) He argues that, without a hearing, a "fundamental miscarriage of justice" will result. (*Id.* at 4.) Finally, petitioner asserts that he intends to raise new claims at an evidentiary hearing, thereby "precluding the necessity to amend his petition." (*Id.*)

Pursuant to 28 U.S.C. § 2254(e)(2):
(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
(A) the claim relies on-
(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;
**\*16** 28 U.S.C. § 2254(e)(2).

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir.1999). *See also* Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir.2005). Petitioner fails to overcome this initial hurdle. With respect to petitioner's claim of ineffective assistance of counsel, petitioner received several hearings in the trial court on his *Marsden* motions, wherein his complaints about counsel were fully aired. There is no evidence that the factual record developed by the trial court during these hearings is inadequate or incorrect or that the hearing itself was deficient in any way. Therefore, the factual basis for this claim has been fully developed and "exists in the record" and an evidentiary hearing would be repetitive and unnecessary. *See* Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (a defendant is entitled to a federal evidentiary hearing on his factual allegations only if the merits of the factual dispute were not resolved in the state hearing, the state factual determination is not fairly supported by the record as a whole, the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing, there is a substantial allegation of newly discovered evidence, the material

Slip Copy  Page 14
Slip Copy, 2005 WL 1335888 (E.D.Cal.)
**(Cite as: 2005 WL 1335888 (E.D.Cal.))**

facts were not adequately developed at the state-court hearing, or for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing). With respect to petitioner's other claims, he has not demonstrated that any additional facts need to be determined for a fair resolution of the merits.

Even assuming arguendo that petitioner had not received a full hearing in state court despite his best efforts, petitioner has not demonstrated that an evidentiary hearing is required. A state habeas petitioner is entitled to an evidentiary hearing on a claim only if he alleged "facts that, if proven, would entitled him to relief." *Turner v. Calderon,* 281 F.3d 851, 890 (2002) (quoting *Tapia v. Roe,* 189 F.3d 1052, 1056 (9th Cir.1999)). As discussed above, petitioner has failed to demonstrate that he is entitled to relief on his claims in this court. Further, this court has determined that relief as to petitioner's claims should be denied on the merits because the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, an evidentiary hearing is not warranted. *See Williams,* 529 U.S. at 445.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's May 20, 2002, motion to file a third amended petition be denied;

2. Petitioner's July 5, 2001, motion for evidentiary hearing be denied; and

3. Petitioner's application for a writ of habeas corpus be denied.

**\*17** These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

Slip Copy, 2005 WL 1335888 (E.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2:00cv01962 (Docket) (Sep. 11, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.